IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CENTRAL STATES, SOUTHEAST AND SOUTHWEST AREAS PENSION FUND, and HOWARD MCDOUGALL, Trustee, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | CASE NO.: 07-CV-4772 |
| WARNER AND SONS, INC., | ) ) ) | District Judge Robert M. Dow, Jr. |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs Central States, Southeast and Southwest Areas Pension Fund and Howard McDougall, Trustee, (collectively the "Pension Fund") sued Warner and Sons, Inc. for withdrawal liability pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended by the Multiemployer Pension Plan Amendments Act of 1980 ("MPPAA"), 29 U.S.C. 1001 *et seq*. Plaintiffs have moved for summary judgment [20]. For the following reasons, the Court grants Plaintiffs' motion for summary judgment.

**I.     Background**

The Pension Fund is a multiemployer pension plan under ERISA, administered by its trustee. Warner and Sons, an Indiana corporation, was party to several collective bargaining agreements executed with Local Union 364 of the International Brotherhood of Teamsters, which required Warner and Sons to make contributions to the Pension Fund on behalf of certain employees. On December 15, 2006, Warner and Sons ceased doing business. The Pension Fund subsequently determined that Warner and Sons had effected a "complete withdrawal" from the Fund and, as a result, determined that it incurred withdrawal liability to the Pension Fund in the

1

amount of $387,500.16. Pursuant to the MPPAA, on May 18, 2007, the Fund sent Warner and Sons a notice and demand for payment of withdrawal liability.

On August 15, 2007, Warner and Sons requested that the Pension Fund review its withdrawal liability assessment on the ground that it is an excavation company entitled to invoke ERISA's "building and construction industry" exemption. In support of its claim that it is entitled to the exemption, Warner and Sons claims that the primary job function of the covered truck drivers was hauling earth on construction sites, hauling earth to and from construction sites, and hauling materials to construction sites. By letter dated September 14, 2007, the Fund responded by stating that the building and construction industry exemption to withdrawal liability did not apply because Warner and Son's covered employees were merely truck drivers rather than employees involved in work at a construction site. On October 19, 2007, Warner and Sons initiated arbitration, which remains pending. Warner and Sons has ceased operations and its only activity is winding up its business affairs. Warner and Sons has not made any withdrawal liability payments to the Pension Fund.

## II. Discussion

### A. Summary Judgment Standard

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining whether there is a genuine issue of fact, the Court "must construe the facts and draw all reasonable inferences in the light most favorable to the nonmoving party." *Foley v. City of Lafayette, Ind.,* 359 F.3d 925, 928 (7th Cir. 2004). To avoid summary judgment, the opposing party must go beyond the pleadings and "set forth

specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (internal quotation marks and citation omitted). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. The party seeking summary judgment has the burden of establishing the lack of any genuine issue of material fact. See *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Summary judgment is proper against "a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322. The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson*, 477 U.S. at 252.

### B. Withdrawal Liability

Under ERISA and the MPPAA, an employer withdrawing from a multiemployer pension plan is liable for its share of unfunded vested benefits. See 29 U.S.C. § 1381. When an employer withdraws, the plan must determine the amount owed by the employer, notify the employer of the amount of withdrawal liability and a schedule of payments, and demand payment. 29 U.S.C. §§ 1382, 1399(b)(1). The employer may request that the plan review its liability determination. 29 U.S.C. § 1399(b)(2)(A). The plan then must respond to the employer's request and provide the basis for its decision. 29 U.S.C. § 1399(b)(2)(B). If the employer disputes the plan's determination, it may initiate arbitration. 29 U.S.C. § 1401. Even if an employer challenges the plan's determination, it must make withdrawal liability payments during arbitration. 29 U.S.C.

§§ 1399(c)(2) and 1401(d); see *Central States, Southeast and Southwest Areas Pension Fund v. Wintz Properties, Inc.*, 155 F.3d 868, 872 (7th Cir. 1998) ("ERISA unequivocally establishes a 'pay now, arbitrate later' scheme"). If the arbitrator decides in the employer's favor, the employer has a statutory right to a refund (with interest) of its interim payments. 29 U.S.C. § 1401(d); see also *Wintz Properties*, 155 F.3d at 871. If the employer does not pay, the plan may file a civil action in federal court to collect the withdrawal liability. 29 U.S.C. § 1451(a)(1). That is what happened here.

Judges have no general equitable power to excuse interim withdrawal liability payments. See *Trustees of the Chicago Truck Drivers, Helpers and Warehouse Workers Union (Independent) Pension Fund v. Central Transport, Inc.*, 935 F.2d 114, 119 (7th Cir. 1991). However, there is a narrow exception: interim liability payments may be excused if the employer shows that (i) the pension fund's claim is frivolous; and (ii) the payments would cause irreparable harm. See *Central States, Southeast and Southwest Areas Pension Fund v. Bomar National, Inc.*, 253 F.3d 1011, 1016 (7th Cir. 2001); *Trustees of the Chicago Truck Drivers, Helpers and Warehouse Workers Union (Independent) Pension Fund v. Rentar Indus., Inc.*, 951 F.2d 152, 154 (7th Cir. 1991); *Robbins v. McNicholas Transp. Co.*, 819 F.2d 682, 686 (7th Cir. 1987). A claim is frivolous if it has "no arguable basis in law or in fact." *Talley v. Lane*, 13 F.3d 1031, 1033 (7th Cir. 1994) (citations omitted). Irreparable harm requires the threat of imminent insolvency. See *Debrecini v. Merchants Terminal Corp.*, 889 F.2d 1, 7 n.6 (1st Cir. 1989).

Warner and Sons argues that the Pension Fund does not have a colorable claim – and that Warner and Sons therefore is not liable for withdrawal payments – because it qualifies for the building and construction industry exemption under section 4203 of ERISA, 29 U.S.C. § 1383(b). To qualify for that exemption, the employer must establish that "substantially all" of

4

the employees for whom it contributed to the fund were building construction employees. *Id*. Neither ERISA nor the MPPAA define "substantially all," but the Seventh Circuit has defined the term as eighty-five percent or more. See *Central States, Southeast and Southwest Areas Pension Fund v. Robinson Cartage Company*, 55 F.3d 1318, 1321 (7th Cir. 1995). The Seventh Circuit also has determined that the "substantially all" test should be applied to the eight-year time period used to determine the fact of liability. *Id*. at 1323-24 n.6.

The statute also does not define the term "building and construction industry." The legislative history suggests that the term should "be given the same meaning as has developed in administration of the Taft-Hartley Act." H.R. Rep. No. 96-869(I), at 76 (1980), as reprinted in 1980 U.S.C.C.A.N. 2918, 2944. The term has been construed narrowly because, as used in Section 1383(b), it is part of a statutory exception. See *Union Asphalts and Roadoils, Inc. v. MO-KAN Teamsters Pension Fund*, 857 F.2d 1230, 1234 (8th Cir. 1988). In *Union Asphalts*, an employer appealed summary judgment in favor of the pension fund, maintaining that it was entitled to the statutory exemption from withdrawal liability because it was in the building and construction industry. *Id*. at 1233. Examining case law construing the Taft-Hartley Act and noting that the National Labor Relations Board generally has defined "building and construction industry" as "'subsum[ing] the provision of labor whereby materials and constituent parts may be combined on the building site to form, make[,] or build a structure,'" the Eighth Circuit concluded that the employer was not entitled to the exemption. *Id*. at 1234-35 (quoting *Carpet, Linoleum, and Soft Tile Local Union No. 1247*, 156 N.L.R.B. 951, 959 (1966)). The court reached that conclusion because it found that the employees acted as suppliers, transporting materials from its refinery to a buyer's job site, unloading, and returning to the refinery, and did not engage in any construction at the job site. *Id*. at 1235. The court also gave weight to

whether the employees' duties included "work or significant involvement on the construction site." *Id*.

The question before this Court is not, as Defendant attempts to frame it, whether Warner and Sons meets the criteria for the labor dispute exception, thus entitling it to refuse to make withdrawal liability payments. Rather, the question is whether, while arbitration of such a matter is pending and unresolved, Defendant must make interim withdrawal liability payments. Under Seventh Circuit law, the district court's task simply is to "assure[ ] itself that the plan's claim is legitimate," and if the court can do that, it "should order the making of interim payments and leave the rest to the arbitrator." *Central Transport*, 935 F.2d at 119. All that this Court may decide is whether the Pension Fund lacks a "colorable claim" because Warner and Sons falls squarely within the building and construction industry exemption. Only then would Warner and Sons be relieved of its obligation to make interim withdrawal liability payments.

To defeat summary judgment, Defendant must set forth facts showing there is a genuine issue for trial on the question of whether the Pension Fund's claim is frivolous. Defendant contends that it was in the building and construction industry because Warner and Sons employees "would load and unload their dump trucks with earth, debris or other materials that the drivers would haul from, to and around the construction sites where Warner and Sons, Inc. employees were doing the excavation and demolition work." Def. Resp. at 3. Defendant also argues that the declarations of more than eighty-seven percent of the dump truck drivers employed by Warner and Sons and for whom Warner and Sons had an obligation to contribute to the Fund show that Warner and Sons was in the business of excavating earth and demolishing old structures to make way for new structures. It is undisputed that Warner and Sons conducted construction work on its own job sites, unlike the employer-supplier in *Union Asphalts. Union*

6

*Asphalts,* 857 F.2d at 1235. However, it also is undisputed that Defendant's covered employees were drivers whose job duties included driving to and from, and transporting materials to and from, construction sites. Warner and Sons may generally be a building and construction industry employer, yet still fail to qualify for the exemption because the covered employees are not performing work on-site. See *Central States Pension Fund v. Waterland Trucking Service, Inc.*, 2006 WL 4094350, at *3-*4 (N.D. Ill. 2006). Thus, the question remains whether Warner and Sons' covered employees (the truck drivers who haul the materials used) had sufficient involvement on the construction site to qualify for the exception because they were performing work in the building and construction industry.

The Court finds the Pension Fund's argument – that driving to, from, and around construction sites does not constitute work in the building and construction industry – to be, at a minimum, plausible. See *Union Asphalts,* 857 F.2d at 1235; see also *Waterland Trucking,* 2006 WL 4094350 (N.D. Ill. 2006). Defendant discusses in detail *In re Carl E. Smith, Inc.*, 2006 Bankr. 502 (Bkrtcy S.D. W. Va. 2006), in which the bankruptcy court analyzed the work performed by the employer as a whole rather than the work of the employees for whom the employer had an obligation to contribute. However, Warner fails to note that the *Smith* decision was vacated in its entirety. *In re Carl E. Smith, Inc.*, 360 B.R. 502 (Bkrtcy S.D. W. Va. 2006). In addition, that case was decided on the merits and did not deal with whether interim payments should be required, because Smith made its interim payments pending the adjudication on the merits.

The *Smith* case also stands in direct contrast to the district court's decision in *Oregon-Washington Carpenters-Employers Pension Trust Fund v. BQC Construction, Inc. Hardware Services*, 485 F. Supp. 2d 1206 (D. Ore. 2007). In *BQC Construction*, the employer argued,

among other things, that the term "employer" in section 4203(b) of ERISA was meant to apply to an "employer engaged primarily in the building and construction industry," and because the employer was no longer engaged in the building and construction industry, it was exempt from withdrawal liability. 485 F. Supp. 2d at 1212. In reversing the arbitrator's award, the district court found that the arbitrator had erred in determining that "withdrawal liability [is] conditioned on the employer's being 'primarily' engaged in the building and construction industry." *Id*. at 1214. Rather, the court determined that "[i]t is the *employees* for whom the employer *has an obligation to contribute* who must substantially all perform work in the building and construction industry." *Id*. at 1215 (emphasis in original). At a minimum, the apparent split of authority indicates that the Pension Fund at least has a colorable position on the issue.

In addition, the facts set forth in the affidavits submitted by Warner and Sons, even if true, do not establish definitively that "substantially all" of its covered truck drivers were performing construction industry work. Other than making imprecise representations, Warner and Sons has not provided the necessary supporting documentary evidence,[1] nor do its affidavits detail (i) the specific work being performed by each truck driver employee, (ii) where the work was performed (on-site or off), (iii) when the work was performed, and (iv) how much time was spent performing each duty. As a result, the Court is unable to determine from quantifiable evidence whether substantially all of the Warner and Sons truck drivers performed construction industry work.

Based on the undisputed facts, the Pension Fund is entitled to summary judgment on its claim that Defendant must make interim payments pending the arbitrator's decision. The pension fund determined that Defendant partially withdrew and sent notice and demand for payment of

---

[1] Warner claims that it has no documents because its paper records were destroyed when it went out of business.

8

withdrawal liability. Defendant failed to make any withdrawal liability payments. The law requires Defendant to pay interim withdrawal payments while it disputes liability (see 29 U.S.C. §§ 1399(c)(2) and 1401(d)), and the Court may excuse interim payments only if Defendant demonstrates both that the Pension Fund's claim is frivolous and that making the payments would cause irreparable harm (see *McNicholas Transp.,* 819 F.2d at 686). The Pension Fund has met its burden of demonstrating that it has at least a colorable claim that Defendant is not exempt from withdrawal liability.[2] Having made that determination, the Court is obligated to "leave the rest to the arbitrator" at this time. *Central Transport*, 935 F.2d at 119.

In addition to the principal amount of its withdrawal liability assessment, the Pension Fund is entitled to recover interest on the missed interim withdrawal liability payment, liquidated damages, and attorneys' fees and costs pursuant to Section 502(g)(2) of ERISA, 29 U.S.C. § 1132(g)(2). In collection actions, delinquent withdrawal liability payments are treated as delinquent employer contributions and are enforced under Title I of ERISA. 29 U.S.C. § 1451(b). The damages awarded under 29 U.S.C. § 1132(g)(2), made applicable to cases involving withdrawal liability pursuant to 29 U.S.C. § 1451(b), are mandatory. *Central States, Southeast and Southwest Areas Pension Fund v. Slotky*, 956 F.2d 1369, 1377 (7th Cir. 1992). The liquidated damages awarded under MPPAA "are something that an employer must pay as a penalty for refusing to follow the statutory procedure for challenging assessments of withdrawal liability." *Central States, Southeast and Southwest Areas Pension Fund v. Lady Baltimore Foods, Inc.*, 960 F.2d 1339, 1347 (7th Cir. 1992). Thus, this Court awards the Pension Fund the unpaid contributions, interest thereon, fees, costs, and the greater of an amount equal to the

---

[2] Because Plaintiffs have demonstrated that their claim is not "frivolous," the Court need not reach the question of whether the payments would cause irreparable harm. See *Central States, Southeast and Southwest Areas Pension Fund v. Bomar National, Inc.*, 253 F.3d 1011, 1016 (7th Cir. 2001)

interest or liquidated damages in the amount of twenty percent of the unpaid amounts. 29 U.S.C. § 1132(g)(2).

## III. Conclusion

For the foregoing reasons, the Court grants Plaintiffs' motion for summary judgment [20].

Dated: September 9, 2008 _____
Robert M. Dow, Jr.
United States District Judge